CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
DEC 20 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DWAYNE W. SCOTT, | ) | Civil Action No. 7:11-cv-00187 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C. ZYCH, | ) | By: Hon. Jackson L. Kiser |
| Respondent. | ) | Senior United States District Judge |

Dwayne W. Scott, a federal prisoner proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Petitioner argues that his institutional conviction was obtained in violation of due process. Respondent filed a motion to dismiss, and petitioner replied, making the matter ripe for disposition. After reviewing the record, I grant respondent's motion to dismiss because petitioner is not entitled to habeas relief.

I.

On Friday, July 1, 2010, during a random search of the dish room in the Food Service section of a Federal Correctional Institution, petitioner asked, "What are you going to do about the rims on the glasses . . . at Big Sandy we had different rims?" Petitioner was advised that the glasses had been purchased from UNICOR.[1] Petitioner stated that USP Big Sandy did not use the same type of glasses and that the Food Service Administrator ("FSA") was wrong. Petitioner allegedly jumped up and down; shouted that the FSA did not know who she was messing with and that nobody messed with him on the compound; and stepped toward the FSA while wildly swinging his arms. The FSA felt her safety was jeopardized and charged him with violating Code 203, "Threatening Another with Bodily Harm or Any Other Offense."

A copy of the incident report was delivered to petitioner that same day at approximately

6:58 p.m. The investigating lieutenant advised petitioner of his rights. Petitioner told the lieutenant, "No comment, but I need to talk to the administration. Tell the administration to come holl[ar] at me. If they going to give me a disciplinary transfer then back the bus up tell them to back it up."

A Unit Disciplinary Committee ("UDC") hearing was held on Wednesday, July 7, 2010, during which petitioner did not comment on the charge. The UDC referred the charge to the Discipline Hearing Officer ("DHO") for further adjudication.

On July 7, 2010, Petitioner received a Notice of Discipline Hearing Before the Discipline Hearing Officer and was again advised of his rights. Petitioner indicated on the form that he requested P. Baker as a staff representative.

The DHO held the disciplinary hearing on July 30, 2010. Petitioner understood the DHO's description of petitioner's due process rights and said he did not have documentary evidence to present. P. Baker appeared as petitioner's staff representative. Petitioner told the DHO, "I did not step towards her. I did not jump up and down. I never swung my arms in any way. My hands were at my sides. I was just talking to her."

To adjudicate the charge, the DHO considered the written statement of the FSA; the written statement of the Cook Supervisor, who was present during the incident; petitioner's statement to the DHO; and the fact that petitioner declined to make a statement to the investigating lieutenant. Based on the greater weight of the evidence, the DHO found petitioner committed the prohibited act of Code 299, "Conduct which Disrupts." The DHO based his findings on the reporting officer's statement, which the DHO recited in the final report. The

---

[1] UNICOR is also known as Federal Prison Industries, which manufactures items with prison labor.

2

DHO sanctioned petitioner with 60 days' forfeiture of Good Conduct Time, 30 days' disciplinary segregation; 180 days' forfeiture of telephone privileges. The DHO imposed the sanctions because petitioner's disruptive conduct prevented the FSA from completing daily assignments. The DHO also noted that inmates often carry out threats of violence and that this behavior cannot be tolerated in the prison. Finally, the DHO imposed the sanctions to punish petitioner for his behavior, to hold him accountable for violating institutional rules, and to deter petitioner and other inmates from similar misconduct.

Petitioner was advised of the findings, the specific evidence relied on, the action, and the DHO's reasons, and his right to appeal within 20 days, pursuant to the BOP's Administrative Remedy Program. Petitioner received a copy of the DHO's report on October 28, 2010. Petitioner appealed the disciplinary action to the Regional and Central Office levels, which upheld the disciplinary action.

## II.

To be entitled to relief under § 2241, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). For prison disciplinary proceedings resulting in the loss of good time credit, due process requires prison officials to provide the inmate with: (1) advanced written notice of the claimed violation; (2) disclosure of evidence against the petitioner; (3) the right to present documentary evidence and to call witnesses unless the hearing officer finds good cause not to allow a witness; (4) a neutral, detached hearing body; and (5) a written statement by the fact finder about the evidence relied on and the reasons for the disciplinary action taken. Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974). Due process is satisfied when these minimum requirements have been met and

3

when there is "some evidence" in the record "that could support the conclusion reached." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." Id. Furthermore, "[r]evocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context." Id. at 456.

A review of the disciplinary action reveals that the Wolff requirements were satisfied. Petitioner received written notice of the charges at least twenty-four hours in advance of the DHO hearing; he received a copy of the incident report on July 1, 2010, and the DHO hearing was held on July 30, 2010. Petitioner accepted the opportunity to make a statement on his own behalf during the DHO hearing. Petitioner declined the opportunity to call witnesses in his defense. Based on the greater weight of the evidence, the DHO determined that petitioner committed the prohibited act of Conduct which Disrupts. The DHO recites the specific evidence relied upon and the reasons for the conviction and the sanctions. Petitioner does not present any evidence to refute that he had a neutral and detached hearing officer. Finally, petitioner received a copy of the DHO report and appealed the conviction. Accordingly, the Wolff requirements were satisfied.

Petitioner claims that staff violated due process by waiting seventy-four hours and two minutes to hold his UDC hearing and that the twenty-four day delay between his UDC and DHO hearings denied him due process. However, these claims lack merit and do not entitle petitioner to relief.

4

Pursuant to BOP policy, the UDC ordinarily holds the initial hearing within three business days from the day after staff became aware of the inmate's misconduct.[2] 28 C.F.R. § 541.15(b) (2010). Petitioner believes the three-day limit is based on the minute he received the incident report. However, the regulation measures time in days, not minutes, and staff complied with the regulation by holding petitioner's UDC hearing within three business days of when staff became aware of the charged misconduct. Furthermore, the policy states that the UDC hearing should "ordinarily" occur within three days; a three-day period is not mandatory. Moreover, even if it took more than three days, petitioner fails to describe any resulting prejudice beyond his mere conclusion. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994) (describing how an inmate must show actual prejudice if staff violate a BOP regulation).

BOP policy also states, "The Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the DHO. . . ." 28 C.F.R. § 541.17(a) (2010). However, BOP policy does not limit the time by which the DHO hearing must occur after the UDC hearing is complete. See Kokoski v. Small, No. 5:07-cv-00145, 2008 WL 3200811, at *19 (S.D. W.Va. Aug. 5, 2008) ("[T]he only time requirement under Wolff is that the inmate receive written notice of the charge within 24 hours of a disciplinary hearing. There are no other time requirements necessary to comport with federal due process."). While Wolff requires a minimum of twenty-four hours between notice and the hearing, it does not establish a maximum limit. See Jones v. Cross, 637 F.3d 841, 846 (7th Cir. 2011) (stating delays in holding a DHO hearing do not impose an "atypical or significant hardship" warranting due process protection). See also Sandin v. Conner, 515 U.S. 472, 484

---

[2] Consequently, the third work day after the incident was Wednesday, July 7, 2010, the day the UDC hearing was

5

Case 7:11-cv-00187-JLK-RSB   Document 25   Filed 12/20/11   Page 5 of 7   Pageid#: 116

(1995) (finding liberty interests in regulations that are protected by the Due Process Clause when the freedom from the imposed restraint is an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . .").

Petitioner also claims that staff violated due process by altering the incident report. The incident report originally stated the time of the incident as 12:33 p.m., the same time the reporting officer signed the incident report. However, staff corrected the error by striking out 12:33 p.m., writing 10:45 a.m., and initialing the change. Notably, the time twice noted in the narrative description of the misconduct was 10:45 a.m.

This minor error of writing 12:33 p.m., the time the employee signed the incident report, as the time of the incident did not prevent petitioner from presenting his defense and did not violate due process. Petitioner clearly knew the actual time of the incident, and the narrative description clearly and repetitively contradicted the erroneous time. Furthermore, petitioner fails to describe any actual prejudice from the wrong time being corrected.

Petitioner alleges that staff's failure to provide him a copy of an administrative detention order describing the reasons for his placement in the Special Housing Unit within 24 hours of the detention, as ordinarily required by BOP policy, deprived him of inmate assistance and prejudiced his ability "to marshal facts to support his defense." Plaintiff again fails to allege any actual prejudice related to this alleged lapse in performance. This failure is not surprising because petitioner received a copy of the incident report on July 1, the same day of his misconduct. The incident report specifically explained the conduct that warranted his subsequent placement in administrative detention. Accordingly, petitioner fails to state an entitlement to

---

actually held, because of an intervening holiday weekend.

habeas relief, and I grant respondent's motion to dismiss.

III.

For the foregoing reasons, I grant respondent's motion to dismiss, dismiss petitioner's habeas petition, and strike the case from the active docket of the court.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to petitioner and counsel of record for respondent.

ENTER: This 20th day of December, 2011.

*/s/ Jackson L. Kiser*
Senior United States District Judge

7